2024 PA Super 233

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ROBERT KARL BARGER, JR. | : | |
| Appellant | : | No. 1024 WDA 2023 |

Appeal from the Order Dated August 7, 2023
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0004955-2005

BEFORE: BOWES, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED: OCTOBER 2, 2024**

Appellant Robert Karl Barger appeals from the order of the Court of Common Pleas of Westmoreland County denying in part Appellant's petition for writ of habeas corpus. After careful review, we affirm.

In January 2006, Appellant pled guilty at docket CP-65-CR-0004955-2005 to indecent assault of a person less than 16 years of age, indecent exposure, and unlawful contact with a minor in connection with offenses he committed in 2005. On September 25, 2006, the trial court imposed a sentence of one year less one day to two years less one day of incarceration. As the trial court deemed Appellant to be a sexually violent predator (SVP), Appellant was required to comply with lifetime registration under Megan's Law III (42 Pa.C.S.A. § 9795.1(b)(3)), the sexual offender registration statute in effect at that time. On August 14, 2007, this Court affirmed the judgment of

---

[*] Former Justice specially assigned to the Superior Court.

sentence. *See Commonwealth v. Barger*, 2042 WDA 2006 (Pa.Super. August 14, 2007) (unpublished memorandum). Appellant did not file a petition for allowance of appeal with our Supreme Court.

In a related case, in October 2011, Appellant was charged at docket CP-65-CR-0003703-2011 with Failure to Comply with Registration of Sexual Offenders Requirements of Megan's Law III (formerly 18 Pa.C.S.A. § 4915(a)(1)) and Failure to Provide Accurate Information (18 Pa.C.S.A. § 4915(a)). On June 19, 2012, Appellant was convicted of these offenses and on September 1, 2012, the trial court sentenced Appellant to an aggregate sentence of five to ten years' incarceration. On December 4, 2013, this Court affirmed the judgment of sentence at the 3703-2011 docket and on May 7, 2014, the Supreme Court denied Appellant's petition for allowance of appeal. *See Commonwealth v. Barger*, 919 WDA 2013 (Pa.Super. December 4, 2013) (unpublished memo), *appeal denied*, 91 A.3d 161 (Pa. 2014).

On October 8, 2018, Appellant filed identical *pro se* PCRA motions at both dockets, challenging his registration requirements imposed for his 2006 convictions for assault, his SVP designation, and his 2012 convictions for failure to comply with such registration requirements on the basis that Megan's Law III, the statute under which he had been convicted, had been found to be unconstitutional and void *ab initio* in *Commonwealth v. Neiman*, 624 Pa. 53, 84 A.3d 603 (2013).

The PCRA court appointed Appellant counsel, who subsequently filed a petition to withdraw and a ***Turner-Finley*** no-merit letter.[1]  On June 3, 2019, the PCRA court issued notice of its intent to dismiss the petitions without a hearing pursuant to Pa.R.Crim.P. 907.  On July 16, 2019, the PCRA court dismissed the petitions as untimely filed.  On May 11, 2020, this Court affirmed the PCRA court's order and on October 27, 2020, the Supreme Court denied Appellant's allowance of appeal.  ***See Commonwealth v. Barger***, 1031 WDA 2019, 1158 WDA 2019 (Pa.Super. May 11, 2020) (unpublished memo), *appeal denied*, 240 A.3d 879 (Pa. 2020).

On February 26, 2021, Appellant filed identical *pro se* "Amended Writs for Habeas Corpus" in both dockets, again claiming that the Supreme Court's decision in ***Neiman***, which invalidated Megan's Law III, removed statutory authority for his registration requirements, his SVP designation, and his 2012 convictions.  The trial court denied the habeas petitions, finding that Appellant could not seek habeas relief to obtain the relief previously denied in his untimely PCRA petitions.

After Appellant filed a timely *pro se* appeal, the trial court conceded that it had erred in refusing to consider the merits of Appellant's *habeas* petition and requested a remand pursuant to ***Commonwealth v. Lacombe***, 660 Pa. 568, 234 A.3d 602 (2020) in which our Supreme Court "decline[d] to find that the PCRA, or any other procedural mechanism, is the exclusive method for

---

[1] ***See Commonwealth v. Turner***, 518 Pa. 491, 544 A.2d 927 (1988) and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

challenging sexual offender registration statutes." *Id*. at 595, 234 A.3d at 618 (noting that sexual registration statutes may be challenged through a habeas petition or other procedural mechanisms as defendants would be unable to raise such challenges under the PCRA based on untimeliness grounds or because their sentence has expired). On February 18, 2022, this Court vacated the trial court's order and remanded for the trial court to review the merits of Appellant's habeas petitions. This Court also directed the lower court to appoint Appellant counsel prior to the merits hearing. *See Commonwealth v. Barger*, 503-504 WDA 2021 (Pa.Super. February 18, 2022) (unpublished memorandum).

Upon remand, the trial court appointed Timothy P. Dawson, Esq. to serve as Appellant's counsel and scheduled a hearing on the habeas petitions. Thereafter, the trial court entered an order on August 7, 2023, granting Appellant's habeas petition in part and vacating his 2012 conviction for violating his registration requirements under Megan's Law III, which was invalidated in *Neiman*. The trial court noted that "an offense created by an unconstitutional law is not a crime and a conviction under it is illegal and void and cannot be a legal cause of imprisonment." Trial Court Opinion (T.C.O.), 8/7/23, at 18-19 (quoting *Commonwealth v. Derhammer*, 643 Pa. 391, 399, 173 A.3d 723, 728 (2017)). The lower court also cited *Commonwealth v. McIntyre*, 659 Pa. 428, 445, 232 A.3d 609, 619 (2020), in which our Supreme Court vacated the defendant's conviction under Section 4915, which was deemed to be void from the time of its enactment pursuant to *Neiman*.

Nevertheless, the trial court denied Appellant's habeas petition in part as it rejected Appellant's suggestion that the invalidation of Megan's Law III relieved him of his lifetime requirement to register as a sex offender with SVP status since subsequent legislation addressed the deficiencies raised by the **Neiman** Court's invalidation of Megan's Law III.

On September 1, 2023, Appellant filed a notice of appeal from the August 7, 2023 order denying Appellant's habeas petition in part. On September 14, 2023, Attorney Dawson filed a motion to withdraw. On September 15, 2023, the trial court granted the motion to withdraw without elaboration, appointment of substitute counsel, or indication that a colloquy was conducted pursuant to **Commonwealth v. Grazier**, 552 Pa. 9, 713 A.2d 81 (1988). **See also** Pa.R.Crim.P. 120(A)(4) ("An attorney who has been retained or appointed by the court shall continue such representation through direct appeal or until granted leave to withdraw by the court pursuant to paragraph (B)"); Pa.R.Crim.P. 120(B)(3) ("Upon granting leave to withdraw, the court shall determine whether new counsel is entering an appearance, new counsel is being appointed to represent the defendant, or the defendant is proceeding without counsel").

Thus, on March 1, 2024, this Court remanded the case back for the trial court to inform the Court if the trial court had conducted a **Grazier** colloquy or to conduct such colloquy if one had not already occurred. On May 3, 2024, the trial court notified this Court that on April 26, 2024, it conducted a **Grazier** colloquy in which Appellant indicated that he wished to proceed *pro se* and

declined the appointment of both counsel and standby counsel. As both Appellant and the Commonwealth submitted briefs on appeal, we may now review the merits of the appeal.

Appellant raises one issue for our review on appeal:

> Whether the collateral proceedings court abused its discretion or otherwise erred illegally, where said court failed to mention or otherwise discuss its holding of [Appellant's] claim concerning his Sexually Violent Predator Status in accord with the controlling precedence [sic] of our Supreme Court case of **Commonwealth v. Neiman**, 84 A.3d 603 (Pa. 2013) and our controlling Superior Court case of **Commonwealth v. Hooks**, 1738 MDA 2017 (Pa.Super. July 24, 2018) by way of stare decisis?

Appellant's Brief, at 4.

It is necessary to review the timeline of relevant statutory and case law concerning Pennsylvania's laws imposing registration, notification, and counseling ("RNC") requirements on sex offenders. When Appellant was convicted of sexual offenses in 2006 and designated as an SVP, he was required to submit to lifetime registration under Megan's Law III, which was the sexual offender registration statute in effect at that time.

On December 20, 2011, the General Assembly enacted the Sexual Offender Registration and Notification Act (SORNA), 42 Pa.C.S.A. §§ 9791-9799.9, in order to comply with the federal Adam Walsh Child Protection and Safety Act of 2006, Public Law 109-248, 42 U.S.C. §§ 16901-16991, "which mandates that states impose on sex offenders certain tier-based registration and notification requirements in order to avoid being subject to a penalty, *i.e.* the loss of federal grant funding." **Commonwealth v. Muniz**, 640 Pa. 699,

724, 164 A.3d 1189, 1203-1204 (2017) (citing **In re J.B.**, 630 Pa. 408, 412, 107 A.3d 1, 3 (2014)).  As a result, SORNA provided for the expiration of Megan's Law III, as of December 20, 2012, the effective date of SORNA. **Muniz**, 640 Pa. at 724, 164 A.3d at 1204 (citing **In re J.B.**, 630 Pa. at 412, 107 A.3d at 3).

After SORNA had become effective, in 2013, the Pennsylvania Supreme Court issued its decision in **Neiman**, striking down Act 2004-152, the legislation through which Megan's Law III was enacted, as violative of the single subject rule.  **Neiman**, 624 Pa. at 57-58, 84 A.3d at 605; Pa. Const. art. III, § 3 ("No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof").

Acknowledging the potential impact of its decision in invalidating a statute that contained provisions establishing registration requirements for sexual offenders, the **Neiman** Court stayed its decision for ninety (90) days to afford the General Assembly time to reenact portions of Act 2004-152 "in a manner consistent with the Constitution." **Neiman**, 624 Pa. at 75, 84 A.3d 616. While the **Neiman** decision declared Act 152 unconstitutional in its entirety, the Supreme Court cautioned that:

> this action should, in no way, be read as a repudiation of the merits of the various legislative components of Act 152 such as Megan's Law III, "which serves a vital purpose in protecting our Commonwealth's citizens and children, in particular, from victimization by sexual predators. … [S]ince we find merit in the General Assembly's suggestion that our decision abrogating the

entirety of Act 152 will have a significant impact on a whole variety of individuals and entities which have ordered their affairs in reliance on its provisions, we will stay our decision, as we have done under similar circumstances, in order to provide a reasonable amount of time for the General Assembly to consider appropriate measures, or to allow for a smooth transition period.

***Neiman***, 624 Pa. at 74-75, 84 A.3d 615-616.

Thereafter, in March 2014, before the stay expired, the General Assembly responded to the ***Neiman*** decision by enacting Act 19 of 2014, ***see*** Act of Mar. 14, 2014, No. 19, P.L. 41 (Act "2014-19") "which modified the wording of § 9799.13(3) to clarify that persons who were required to register with the state police at any time before SORNA's effective date, and whose registration period had not expired, were still obligated to register with the state police as provided in § 9799.15." ***Derhammer***, 643 Pa. at 396, 173 A.3d at 726.

Several years later, on June 19, 2017, the Pennsylvania Supreme Court found in ***Muniz*** that SORNA I's registration requirements were punitive in nature and the retroactive application of such registration provisions violated the *ex post facto* clauses of both the United States and Pennsylvania Constitutions. ***Muniz***, 640 Pa. at 706, 164 A.3d at 1193. Thereafter, in ***Commonwealth v. Butler***, 173 A.3d 1212 (Pa.Super. 2017) (***Butler I***), a panel of this Court held it was constrained by ***Muniz*** to find SORNA's framework for designating convicted offenders as SVPs constituted criminal punishment and violated ***Apprendi v. New Jersey***, 530 U.S. 466 (2000) and ***Alleyne v. United States***, 570 U.S. 99 (2013). ***Butler I***, 173 A.3d at 1218.

In response to **Muniz** and **Butler I**, the Legislature amended SORNA I and enacted SORNA "Act 10" of 2019, Act of Feb. 21, 2018, P.L. 27 ("Act 10"), creating a new statutory scheme referred to as SORNA II.

> Act 10 split SORNA, which was previously designated in the Sentencing Code as Subchapter H into two subchapters. Revised Subchapter H applies to crimes committed on or after December 20, 2012, whereas Subchapter I applies to crimes committed after April 22, 1996, but before December 20, 2012. In essence, Revised Subchapter H retained many of the provisions of SORNA while Subchapter I imposed arguably less onerous requirements on those who committed offenses prior to December 20, 2012, in an attempt to address this Court's conclusion in **Muniz** that application of the original provisions of SORNA to these offenders constituted an *ex post facto* violation.

**Commonwealth v. Torsilieri**, 659 Pa. 359, 381, A.3d 567, 580–81 (2020).

Importantly, Subchapter I, which applies to certain petitioners who committed their offense before the effective date of SORNA, imposes lifetime registration for SVPs. Subchapter I defines a "sexually violent predator" as

> …a person who has been convicted of a sexually violent offense and who is determined to be a sexually violent predator under section 9799.58 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses or who has ever been determined by a court to have a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses *under a former sexual offender registration law of this Commonwealth.*

42 Pa.C.S.A. § 9799.53 (emphasis added).

After SORNA II was in effect, on March 26, 2020, the Supreme Court issued **Commonwealth v. Butler**, 657 Pa. 579, 226 A.3d 972 (2020) (**Butler II**), reversing this Court's decision in **Butler I**. The Supreme Court

determined that the Subchapter H registration requirements applicable to SVPs did not constitute criminal punishment and thus were not subject to the requirements of **Apprendi** and **Alleyne**. *Id.* at 585, 226 A.3d at 976. Thereafter, on July 21, 2020, the Pennsylvania Supreme Court held in **Lacombe** that the RNC requirements of Subchapter I of SORNA II do not constitute criminal punishment, and therefore, are not violative of the *ex post facto* rule. **Lacombe**, 660 Pa. at 609, 234 A.3d at 626-27.

Turning back to the instant case, Appellant argues that he cannot be required to register under Subchapter I of SORNA II since his duty to register as a SVP arose under Megan's Law III, which has since been determined to be void. Appellant, who committed his qualifying offenses before December 20, 2012, argues that Subchapter I of SORNA cannot be retroactively applied to him as such a designation would be violative of *ex post facto* prohibitions. However, Appellant does not suggest that the RNC requirements imposed upon him through Subchapter I are in any way punitive.[2]

As noted above, in **Butler II**, our Supreme Court rejected a similar challenge to Subchapter H of SORNA, as it found that the RNC requirements imposed on SVPs therein do not constitute criminal punishment. The Court distinguished SVPs from non-SVP registrants "due to heightened public safety concerns based on the determination that SVPs have a 'mental abnormality or

---

[2] **See Muniz**, 640 Pa. at 732, 164 A.3d at 1208 ("Our decision regarding violation of [the *ex post facto*] clause depends on a determination of whether SORNA's retroactive application … constitutes punishment").

a personality disorder that makes the individual more likely to engage in predatory sexually violent offenses.'" **Butler II**, 660 Pa. at 604, 226 A.3d at 987 (quoting 42 Pa.C.S.A. § 9799.12). The Supreme Court clarified that:

> [a]lthough we recognize the RNC requirements impose affirmative disabilities or restraints upon SVPs, and those requirements have been historically regarded as punishment, our conclusions in this regard are not dispositive on the larger question of whether the statutory requirements constitute criminal punishment. This is especially so where the government in this case is concerned with protecting the public, through counseling and public notification rather than deterrent threats, not from those who have been convicted of certain enumerated crimes, but instead from those who have been found to be dangerously mentally ill. Under the circumstances, and also because we do not find the RNC requirements to be excessive in light of the heightened public safety concerns attendant to SVPs, we conclude the RNC requirements do not constitute criminal punishment.

*Id*. at 614, 226 A.3d at 992-93. We also reiterate that in **Lacombe**, the Supreme Court specifically found that Subchapter I of SORNA II "is nonpunitive and does not violate the constitutional prohibition against *ex post facto* laws." **Lacombe**, 660 Pa. at 575, 234 A.3d at 605-606.

Given the same logic set forth in **Butler II** and **Lacombe**, this Court has rejected *ex post facto* challenges brought by a petitioners deemed to be SVPs under Megan's Law III, who claimed they should not be subject to retroactive application of Subchapter I of SORNA II. In **Commonwealth v. Zack**, 262 A.3d 497 (Pa.Super. 2021), this Court held that the appellant, who was originally deemed an SVP under Megan's Law III, "must now register under Subchapter I of SORNA II, which has less stringent reporting requirements than the constitutionally permissible requirements of

Subchapter H." ***Id***. at 505 (citing ***Commonwealth v. Elliott***, 249 A.3d 1190 (Pa.Super. 2021)) (rejecting the appellant's argument that his RNC requirements as an SVP under Subchapter I of SORNA II are punitive and violative of the *ex post facto* clause).[3]

As a result, Appellant's claim that he cannot be required to submit to RNC requirements set forth in Subchapter I of SORNA II is clearly meritless. Accordingly, the trial court correctly determined that Appellant is not entitled to habeas relief. However, upon remand of the record, we direct the lower court to notify Appellant of his registration requirements under Subchapter I.

Order affirmed. Case remanded with instructions. Jurisdiction relinquished.

---

[3] We are not persuaded by Appellant's reliance on ***Commonwealth v. Hooks***, 1738 MDA 2017 (Pa.Super. July 24, 2018) (unpublished memorandum). Our internal operating procedures provide that while "non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value, … [a]n unpublished memorandum decision filed prior to May 2, 2019, shall not be relied upon or cited by a Court or a party in any other action or proceeding." 210 Pa.Code § 65.37(B). This rule is subject to exceptions which are not applicable in this case.

Further, the memorandum decision in ***Hooks*** provides no support for Appellant's argument as its holding was based its citation to ***Butler I***, which has since been overruled.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/2/2024